This is a claim for lost profits for the government's breach of plaintiff's lease to exploit petroleum reserves from an offshore field, which the court below found to contain at minimum 60 million barrels of recoverable oil. The government's breach was total, and in the words of this court and the court below, so severely limited exploration and exploitation that the leases were rendered essentially worthless. Under this court's decisions in the Citizens Federal case, the plaintiff had the obligation to show that a loss of profits was reasonably foreseeable if there was to be a breach. It seems clear that that was manifest from the circumstances here, that if you prevented the plaintiff from developing the resource, they would have lost the profits that they would have hoped to gain from developing that resource. But Mr. Olson, didn't they fail to show that they would have made these profits because they couldn't get the leases? Well, there was no question about whether or not a breach would cause a loss of profits. Then the second question under the Citizens Federal case is whether the breach was a substantial factor in the failure to recover profits. Then we would get to the damages question. There is no question, it seems to me, that the breach prevented altogether the recovery of profits, so it was a substantial factor. What the government contends is that there were intervening causes that they might have failed to get permits from the Santa Barbara Pollution Control District, or they might have failed to be able to develop a resource to process the oil. The mistake that the court below made was to impose that burden on the plaintiff rather than the government. It's been the law in this country and in this court for a long, long time, going back to the Bigelow case in the Supreme Court of the United States, that the burden shifts to the wrongdoer with respect to uncertainty. And if there are intervening causes that the government presents as a defense to their breach and the damage that they caused, they must prove it. On that point, and your brief cites a couple of Court of Appeals cases applying state law and a New York case, I think, also applying state law. We have case after case, and I'm sure you're familiar with them, in which we have said the burden of proof on causation lies with the plaintiff. In the three-part test, foreseeability, causation, damages. And causation is what we're really talking about here. To some extent, maybe damages in terms of certainty. But I read the cases that you cite, and they seem to be, one of them is a tort case, one of them is a statutory case, and the third, the New York case, seems to be dealing with amount of damages rather than the question of causation. But how do you deal with our consistent line of cases that say the burden of proof is on the plaintiff with respect to causation? You have also stated, and the Walter case is one of those, where there are alternative causes. The party that has created the breach or created the uncertainty must prove that the alternative cause was that, in fact, prevented the recovery of the damages. I think there's a patent case that we cite from this court. There are decisions, language from the restatement with respect to tort cases, contract cases, and all kinds of cases that were the wrongdoer, which is the government here. There's no question about that. Preventive. Altogether, this is the language of the court below, and I don't think there's any disagreement about that, that the breach by the government made the leases essentially worthless. You could not exploit those. But now the government says, yes, what, in a sense, here. But that's the context in which all lost profits disputes arise. There's always been a breach, at least if you're bifurcating the proceedings. There's a breach. OK, now, what's the remedy? And in order to establish a right to a remedy, it seems to me we've said pretty consistently, you have to show that ultimately the breach caused the loss. And the conclusion reached by the trial court in this case was you didn't prove that. Well, if you accept the idea that the burden is on the plaintiff to prove that all potential intervening causes that could come along did not prevent the loss of the profits, then it's a very difficult situation. But I submit here that your cases are pretty overwhelming. The Walter case, as I said, once a prima facie case is established, the burden is on the defendant to prove alternative causation. The wrongdoer may not object to uncertain estimate of damages or causation with respect to that. Risk of uncertainty must fall on the defendant whose wrongful conduct causes damage. That's the Vaccine Act case, right? Pardon me? That's the Vaccine Act case. Yes, it is. Which is essentially a tort case. Well, that's right. But I submit that under the law of this court, under the law of the Supreme Court, under the law of the restatement, the Bigelow case, which of course all these cases are distinguishable, but the Bigelow case is an ancient principle that the wrongdoer cannot benefit by the wrongdoing. Now, it seems to me that it is the law of this circuit, in a lot of different cases, many of which have been cited in the briefs, that that burden had to be on the government. Now, what happened here is that it's quite clear that the court below put the burden on the plaintiff by saying that the court has not proven that the breach caused the lost opportunity. Saying that the burden is a reasonable certainty. Saying it had the inability to demonstrate more likely than not. These are all languages from page 42, 43, and 49 of the opinion. And in fact, the government was urging precisely that. The government was urging that unless NYCAL proved that it could have accomplished every single step. Now, there's no way to prove that you could have gotten permits because you were prevented from any ability to do that. The evidence is rather clear that the Santa Barbara itself was very interested in this project moving forward. Let me ask you a question, if you could go back to the last point you were making just for a moment. Suppose that the question that the trial court had focused on had been whether NYCAL would have been able to get financing. Would that be an issue, you think, on which the burden of proof would fall on the government or on NYCAL? Well, there's 60 million barrels of oil here. Well, let's assume that it's disputed as to whether you could have gotten financing. Who would bear the burden? That is the burden would be on the government to say, well, you couldn't have gone forward because you couldn't have gotten financing to exploit 60 million built barrels of oil. How about uncertainty as to whether there is actually 60 million barrels of oil out there? Is that your burden or is that the government's? Well, that's certainly not the case here. I understand. I'm just trying to see how far you're shifting the burden. Well, I think that there are probably an infinite number of things that in imagination you could come up with by saying you might not have been able to get the workers. Right, but these are two issues that were in the case. The district trial court did not decide those issues. It decided one of them in your favor and left the other one on the table. But what would be your view as to the burden on whether there's 60 million barrels of oil?  The government's burden? Yes, our position would be that it's the government's burden with respect to financing. The government didn't make a case that there couldn't be financing to exploit 60 million barrels of oil. In fact, the trial court looked at this and said the parties were prepared to go forward. There wasn't any question about that. What stopped this is the government's breach of the contract that prevented anybody from going forward and proceeding with this. I was going to refer a moment ago to the letter that's in the file that the trial court didn't even refer to from Santa Barbara. This is in A6576. It's a letter from Santa Barbara to the people that were the predecessors in my call with respect to these leases. They did December 14, 2000, saying please come to us. We understand you've got this project going. We'd like to help you with respect and negotiation of the process. And they finished this by saying we want to make sure that we can work with you to accommodate your very ambitious schedule. Santa Barbara, the control district, was very anxious to work with NICAL to allow this sort of thing to happen. Now, what the government, what the trial court did with respect to this is found all measure of uncertainty, which it then imposed the burden on NICAL to prove. I went through the court decision again yesterday and found 14 different instances where the trial court said there was uncertainty as to damages. We do not know how much additional cost there would be. We do not know. When you breach a contract and you put the position, put your opponent or the contracting party in a position where they can't go forward, you can always say, well, you couldn't have gotten financing. You couldn't have gotten permits. You couldn't have been able to process your product. The market may have disappeared. You might not have been able to get the workers. The weather may have been a problem. And you have to prove all of those things. Now, where should inequity, or in the context of contracts, the wrongdoers, as Bigelow case put it, you're putting the burden on the party that can't go forward and prove a lot of these uncertain things. So if the party that breached the contract prevented you from proving the things that you find that are uncertain, then that burden ought to be on the government. Now, there might be circumstances under— Go ahead. No, I didn't. Well, I was just going to say, I wonder about the characterization prevented you from proving. I mean, it is true that the trial court in this case said with respect to the delineation well that the breach prevented you from proving that there was oil there. And I think that that sounds very sensible because the prohibition against drilling kept you from actually drilling. But I don't see how, except in the respect that the breach prevented you from actually working out something or trying to work out something with Santa Barbara, I don't see how the government's breach prevented you from proving that had you made such an effort, it would have succeeded, just as it didn't prevent you from proving that had you tried to get financing, you would have succeeded. To the extent that the government's breach puts that in some sort of position of equipoise, they can't prove that you could not have gotten those permits. You can't prove that you could have gotten those permits, although I would say that the evidence in this case is quite clear. And that's the point at which the trial court came down with respect to permitting. Here's Santa Barbara anxious to go forward. If this well had not been aggregated with other wells or other projects, it wouldn't have even needed the permit as a big part of this case. Mr. Olson, what about the fact that all the others took the remedy of restitution? Can there be different remedies with respect to one contract? Yes, because there are different parties that own an interest in the project. And the recovery for restitution by the other parties didn't include the remedy that would be available to my clients. There's no duplicate here. There's no preclusion or estoppel? No, and there's no case that supports that. The other parties decided to take restitution, maybe because they looked around and saw that the government resists and resists and resists. And it can go on forever. A burden hand might have been worth more than 200 bush. With respect to these permits, I think it's important to say that the one project that the trial court focused on was this large project, which was a completely different project, a joint project by a number of producers, six different producers with respect to 43 wells that were widely dispersed, which should be aggregated with respect to pollution control issue problems. This would have been completely separate. There's no evidence to suggest that Santa Barbara would have required that aggregation. In fact, it only aggregated the pollution problem in that earlier case, that Suarez case, as a result of a settlement. Santa Barbara started out by claiming that those were separate projects, and then as a result of a settlement with an environmental group, which was challenging the permit, they went ahead and aggregated it and solved the problem. But even in that case, the producers were able to purchase, for $750,000, the ability to go forward. And there's no reason why Santa Den, the party here, wouldn't have been able to do that. The potential profits— Well, now, that's what I wanted to ask you. then we need to measure the loss, the damages, not at the stage of the first exploratory well or during the suspension period, but the eventual discovery that there was a sizable reserve. Is that right? The evidence would support that A, there was a immensely sizable reserve, that there were potential profits in the billions of dollars here. Which discovery was made after the investment was taken? So don't we need to look and see what was foreseen reasonably when the investment initially was undertaken? Well, this court's decisions at a big location in the Supreme Court said that any uncertainty—all we would have to show here is a reasonable level of uncertainty, not the magnitude of the profits, but the type of damage that would be done. That's all that would be necessary for the trial court to come up with a reasonable decision with respect to damages. There was an immense amount of potential profit here, so there's really no question about that. If there were costs associated with this, they would have been absorbed in the immense amount of profit. And one of your recent decisions said that you could look at subsequent events to support, in fact, the amount of the damage that could be done. If the court permits, I would like to reserve the balance of my time. We'll save some rebuttal time, Mr. Olson. Thank you. Mr. Schwind. Thank you, Your Honor. And may it please the Court. This appeal concerns, as the Court is aware, the enterprise of offshore oil and gas leasing. In particular, two federal offshore leases located offshore California. This Court has noted many times in previous decisions and in numerous contexts that lost profit cases often fail because they're simply too speculative. The trial court held in this case that this was one such case. Well, it's no longer speculative. Right? They eventually found a sizable reserve. Your Honor, the trial court did make its what they call its best estimate of reserves based on expert evidence that might be below the leases in question, 60 million barrels of oil. However, the enterprise of offshore oil and gas exploration and development is far more than just showing oil and then the plaintiff somehow gets damages. And this goes back to the Supreme Court's decision in Mobile Oil when it was talking about the need for government approvals. I'm reading from 530 U.S. 620. The need to obtain government approvals so qualified the likely future enjoyment of the exploration and development rights that the contract, the federal lease, in practice amounted primarily to an opportunity to try to obtain exploration and development rights. That's what the trial court was referring to in its findings that might help challenges here. Could NICAO, essentially could the operators, have obtained all of the permits and approvals that are required to go forward? And remember, these leases are still in the exploratory stage. But Mr. Olson says that the breach precluded meeting the requirements for the permits. The breach in nearly every case precludes going forward with the contract. And that's why cases are often speculative. The same happened here. And so what the trial court did was identify this one necessary step, the need to obtain air permits, emissions permits, air pollution permits, that kind of thing, and analyze whether or not the operator, same again, could have obtained, could have surmounted this necessary hurdle. When we're talking about proximate cause, several of your honorees were asking, OK, what's part of that proximate cause burden? How far does it go? No, we're not talking about the weather. We're not talking about the workers. We're talking about the necessary steps that are required to get from issuing the lease to actually earning a profit, actually going through exploring the wealth, exploring the leases. Are you saying this is a failure proof rather than an intervening cause? It is very easily, yes, Your Honor, a failure proof. Permits are an integral step. You either get them, and you get to go forward, or you don't, and you're done. Well, you kind of toss off weather and employees, but why wouldn't weather be a consideration? Suppose that it so happened that the area of this offshore lease was subject to annual storms for which a platform could not survive. Earthquakes. Earthquakes. I mean, would that not interfere with the causation? Would that not be a factor to be factored into the causation analysis? It would, Your Honor. But presumably, it wouldn't be the burden of the plaintiff to at least negate at the beginning all such considerations. Otherwise, his task would be endless. We agree. Presumably, you would have the burden at least of placing that issue before the court, right? There's a burden of production of saying that there's a serious question of weather. And I take it your position would be, well, maybe it wouldn't. You tell me. That the plaintiff would then have the burden to prove that weather would not interfere with the earning of profits. Or would you? How do you view that? It's difficult to draw that line. In preparing for this case, we've been talking about how to phrase this. And I think in this case, there are certain necessary steps that have to happen for the development of any federal lease. And these are just basic things. You have to go to the court of law. You have to have permits to do that. You have to get the funding to do it. You have to have employees. Suppose that there aren't enough employees who are willing to do this work. If the United States put on some kind of evidence that there was some employee shortage, perhaps it would then shift the burden to the plaintiff to show this is part of this cost burden. We didn't raise weather. We didn't raise employees, Your Honor. We raised, again, these basic things about permits that are required. We raised what we also consider to be a basic step in the process, that the lettees have to discover a sufficient amount of oil to go forward. And so we do think it's significant that even though the breach prevented the next exploratory wells from being drilled, they were never drilled. And so in this case, the plaintiff and all the lettees never found sufficient oil to go forward with exploration and production. That's part of proximate costs. Because they can't show, and this is where we look at the California federal case and the United States more recently. They can't show, they can't definitely establish, that's the two words used by this court, definitely establish that but for the breach, there would have been profits earned. You can't do that, or the lettees cannot do that, unless they can show that there would have been sufficient oil there to go forward with exploration or go forward with development. You said but for. And of course, as I'm sure you know, but for and substantial cause are two competing tests that pop up in our cases and in the cases of the Court of Federal Claims at different times and in different contexts. Which of those two tests do you think applies here? In the context, Your Honor, of lost profits, the test is but for. Whether we use the words but for or not, the question is ultimately, if there had been no breach, would there have been a profit? That's it. We call it but for. There may have been other things that may have been going at the same time, but that's the ultimate question. And so the court has phrased it that way in California. The federal court phrased it that way in the United States. And so, again, in the context of lost profits, it makes eminent sense to say, okay, plaintiff, take the breach out of the equation. Now you've got the burden to show lost profits. And that is probably a but for analysis. So we're trying to think about, to put this in the context of the policy of the law, we know that it's national policy to encourage exploration. We know that exploration is risky. We know that there are investments and so on. And so here our government agreed to restitution. This particular entity is more interested in what seems very reminiscent of the government's policy of termination for convenience. For environmental reasons and all of the others, this is terminated. Termination for convenience, by definition, includes a recovery of the profits that would have been obtained but for the termination. So isn't the issue here rather at the point at which this contract was entered into, what were the reasonable expectations? Not the hopes for a windfall, but certainly there were no hopes that everything would be dry. It seems to me that the government's position is not entirely in accord with the overall policy whereby contractors and private entities fulfill the national purpose. It is certainly that as part of the top flip, Your Honor, the court has essentially stated that it is in the national interest. And it was certainly in the interest of the federal government and these lessees to, if they could, within following the applicable law, reduce all the willingness they could. In 1982, when these leases were issued, at the time these leases were issued, what was known? What was known is that Exxon previously held on these leases and had drilled wells, none of which flowed well to the surface. We know that in 1982, ARPA approved these leases for a combined $21 million. So the question is, in 1982, what was foreseeable? I'm referring to foreseeability. The only evidence on foreseeability in this case from what the parties knew, or anyone knew in 1982, or anyone expected as far as foreseeability, was that based on the prior exploration that these leases would not be economic. That is, it would cost more to develop them than they would earn by producing and selling the oil. But that's impossible. Obviously, there had to be some sort of reasonable, risk-perhaps-bound expectation before these private investments were made. Your Honor, and oil companies and the federal government, we all hoped that these lessees were going to hit these fantastic reservoirs. We all hoped that. Well, but with seismic studies, with all of the preliminary studies, they don't just march into some area and say, I'm going to drill here. With all due respect, Your Honor, that is largely the way it is. We're talking about 5,000, 6,000, 10,000 feet under the sea floor. They have rough evidence of what might be there as far as showing the formation of rock layers and things like that. But ultimately, it is based on a hope, like when I buy a Powerball ticket, that they're going to win. Sometimes they win. Sometimes they don't. In 1982, the expectation, the only evidence of expectation we have in this case, is that based on what had been done previously, these leases would not be economic. And that's why we do raise the argument on an alternate basis with firms that these damages, and keep in mind, the $72 million that NICAO claims it's entitled to, that's discounted for its 4.25% interest rate, a very small interest rate. If you take that to 100% interest, and we fund and discount that, and that's in the record, that turns into $5.2 billion worth of earnings. $5.2 billion worth of profits that NICAO claims are somehow automatically foreseeable in this case. That makes no sense. But foreseeability means anything based on this court's facts. You really mean causation, not foreseeability, don't you? Your Honor, in this context, I do squarely mean foreseeability. But the trial court held against you on foreseeability. It did. And we raise this as an alternate basis for firms. That the trial court created a rule of foreseeability that at the time of leasing, in 1982, if there were any reasonable probability of recoverable reserves, that essentially the plaintiff had satisfied his foreseeability burden. That is not the law of the circuit. That has not been held to be the law of the circuit in any case. The plaintiff had a burden to do with some evidence that $5.2 billion worth of profits were foreseeable in 1982. All we know is that MMS did not see that. And we know that the bidders even accept the bids as evidence of foreseeability. Well, obviously. So the government did offer restitution. So you're saying that that was improper as well? Well, we were ordered to pay restitution, Your Honor, on these leases as part of the number of resources. I gather it was paid to the other. Is that over? That is absolutely over, Your Honor. I've signed this judgment uninformed myself for over a billion dollars. NICAO is the only lefty that did not accept restitution. It chose to gamble. It chose to try to prove lost profits on leases that are still in the exploratory phase. The other lefties know what they did. But for whatever reason, they're lawyers. And NICAO, that sophisticated law is a long way as well, accepted restitution. So to come in here and then say, well, we don't, and fortunately, counsel did not do it today, suggest that they're free, that somehow we're going to be left empty-handed. No, they had a right to restitution. They had almost a million dollars cash in hand for their share of 4.25% of these two leases. Could I return you for a moment to the question of but-for versus substantial factor test? You asserted pretty categorically that but-for is the only test that applies to lost profits analysis. I believe that's what you said. Am I misquoting you? I believe there is one case. Citizens Federal seems to me to say the contrary.  Yes, Your Honor. In the context of lost profits, our position is that the but-for test makes logical sense. If the ultimate question is— Well, okay. I mean, I understand from the beginning that that was your position. But what I'm really interested in is can you tell us what our position is? Your position, Your Honor, as the panel's report has stated, at least in the two cases coming out of California Federal, was anchor savings. Anchor savings is a very somewhat favorable case. Adopted the phrasing of the plaintiff has the burden to definitely establish this causation and then adopted the but-for phrasing. Right. But Judge Friedman, as you know, perhaps in Citizens Federal, took a bite out of the California case and seemed to say that the but-for, the articulation of the but-for test in that case was overly broad and that, in fact, substantial factor is another way to get at the question of lost profits. Do you think that's not representative of our law? I do, Your Honor. I think that in the majority of the lost profits cases, this Court has used, in one way or another, the phrase of the but-for. Either they said flat-out but-for or they said the test is, in the absence of the breach, would these profits have been earned, which is the equivalent of but-for. We do concede, in the context of providing that litigation, is the government's breach the but-for reason to why a plaintiff incurred this cost is a different scenario. It makes, perhaps, more logical sense to say, let's just hold plaintiffs to a substantial factor burden in that case. But in lost profits, again, the open question is, you take away the breach, would there have been lost profits? That is something far closer to a but-for standard. If we look at some of the counsel complaints as far as the burden, counsel says it could not prove, or it can't prove, that it could have obtained the permit. If that's the case, then under this Court's law, right there, the case is too speculative to award lost profits. Because, again, permits, as the Supreme Court has discussed, are necessary parts of it. Same thing with when counsel says that there are all these times where the trial court says that this is uncertain and that is uncertain. Again, it supports the trial court's ultimate decision that essentially the case is too speculative. These are fact questions? They're certainly fact questions, Your Honor. And the plaintiff has not satisfied its burden to show that the trial court's findings are clearly erroneous. I regret I don't have time to go through the evidence on that, but the Court did fairly easily follow the trial court's opinion as far as what it found as far as what was required for the air permit. And the evidence it relied upon in reaching those conclusions, that's it. Could I return you to the burden of proof issue once again? Excuse me. The principle that the government bears some responsibility for the consequences of its breach, responsibility vis-a-vis the proof element, is sort of weaved through various cases. Sometimes it pops up as a burden of production, and in a few instances it pops up with respect to the amount of damages, for example. What is your read of the meaning of the Bigelow case, which is the one that's principally relied on by your opposing counsel? Bigelow, Your Honor. Vis-a-vis this issue. Yes. Bigelow is the antitrust case from that case. In that case, the Court, when it talks about the most elementary conception of justice in public policy, required that the wrongdoer shall bear the risk of uncertainty, which is unlawful. That was in the context of the amount of damage. And so when we're talking about whether it's the decisions of this Court or other courts that looked at that question of uncertainty, resolving against whether it's the tort fees or the wrongdoer, it's always in the context of amount. In this Court most recently, for example, the Arkansas Commission case from earlier this week, made that same distinction as far as regional certainty as to the fact of damages, i.e. whether there had been $1 of damage versus quantifying those damages. This is the same principle here, Your Honor. Okay. Any more questions? No questions? Thank you, Mr. Schwinn. Mr. Olson? Thank you, Your Honor. I would like to return to the point where we just were with the Bigelow case and answer your question, Judge Bryson. The principle is an ancient one. The wrongdoer may not object to the plaintiff's reasonable estimate of the cause of the injury and of its amount. That's on page 265 of the Bigelow decision of the United States Supreme Court. This is the ancient principle that if you're causing this damage by making this lease worthless, then the fact of the injury, the nature of the injury, the amount of the injury, if you're going to assert an intervening cause, then the burden is on the party that did the wrongdoing. Now, with respect to an actual example of how that worked, the government says, well, that's an antitrust case. Well, they say that about the patent cases. They say that about the tort cases. They say that about everything. This is a principle the Supreme Court was talking about, about the wrongdoer not being able to take advantage of the uncertainty created by the wrongdoing. And on page 263, which is the immediately preceding page, or two pages preceding, the court goes through the very same analysis that we're talking about today. The respondent's only answer is that without the conspiracy, the conditions of purchase of films might not have been the same. It is not possible to say this. The conditions cannot be ascertained. Evidence does not establish the fact. It's too speculative. It's too uncertain. The same kind of language in Bigelow that's in the decision below. As I said, 14 times the court says the plaintiff didn't prove this, the plaintiff didn't prove that. And with respect to the substantial factor and the burden on the wrongdoer here, the Walter case, which I cited before, the Energy case, the Bluebonnet case, recent decisions of this court that are going to— The Energy case? I'm sorry, which one is that? It's Energy. I can't remember the— Energy. Energy. Energy. One of the nuclear cases, the Envy. Is that the case? Energy Capital, of course. Energy Capital. Energy Capital. I kept writing it down as Energy, and I thought about the same thing. I understand. But those three cases, and the Citizens' Federal case, which talks about the substantial factor over and over and over again during that opinion, points out that those two cases are cases of this circuit, which adopted the same analysis. And it's particularly appropriate, as opposed to a but-for test, to the extent that there's any difference between the types of cases in which they would be applied. The courts below consistently apply that substantial factor test. And particularly, Judge Bryson, it comes into play when the defendant is saying, well, there are alternative causes. Then the plaintiff must only show it was a substantial cause. And then the defendant, if it is saying, well, there are other reasons why you couldn't have made money or couldn't have had profit, then that's the appropriate place to put the burden on the wrongdoer. But Energy Capital is another example of a case setting aside the but-for substantial factor case, in which the court explicitly put the burden on the plaintiff who's seeking lost profits. The court said, to recover lost profits for breach of contract, the plaintiff must establish by preponderance that the loss was the proximate result of the breach, among others. I think what we have here is a different set of languages. There's no question that the cause of the failure to be able to make profits was the government's breach, because that made the leases worthless. Now, were there other things that the government says, well, you would have been prevented from making those profits anyway, because of those other things that came along? You couldn't have done this. You couldn't have climbed the mountain. You couldn't have done that. Those are those alternative causes where the substantial factor has already been established, and the burden then has to be on the other side. The anchor savings case—I'll come back to a question about the—I think, Judge Newman, you asked me this question about evidence after the breach. Would that be appropriate to establish the damages? The anchor savings case stands A for the proposition that all that the plaintiff must need to prove is that the profits are reasonably foreseeable.  You can't be able to do that under these circumstances with any degree of certainty, because that's up to the trial court to decide, and that post-breach evidence, the anchor savings case specifically says, is admissible to prove that. Now, with respect to the restitution point, the fact is that a party who is the victim of a breach of contract may seek his remedy in restitution or in the recovery of damages. For the government to say, well, they should have—they had this other remedy, is not an answer to the fact that they're entitled to lost profits, reasonable expectation. What this case boils down to is an extraordinarily valuable piece of property that was going to be exploited by the lessees. The trial court had no doubt about that. They wanted to go forward. The trial court's finding of fact is that there are 60 million barrels of oil there, and the government prevented that from happening. And then the government says, now, we're not going to be responsible for the damages that we caused because some other factors may not have been present. We may not have been able to do this. We may not have been able to do that. We think the evidence supports clearly that in this context, that those obstacles would have been overcome. They are a part of pursuing the exploitation of a massive oil reserve. But the point is that the government wasn't able to prove this respect to uncertainty, and the trial court kept relying on that and relying on that and relying on that. And on the government's brief, they say the plaintiff had to prove that it would be able to accomplish every single step of the process of exploiting that. And on that same page, the government says, and the trial court accepted this analysis. And that's exactly wrong. The burden was on the government, since the government's uncertainty is not an explanation, not a justification for giving the government the victory in this case. The uncertainty is an explanation and a rationale for giving the plaintiffs what they're entitled to. Okay. Thank you, Mr. Olson, Mr. Schwinn. The case is taken under submission.